COLEMAN DUPONT ROAD, INCORPORATED, a Boulevard Corporation created by and existing under the laws of the State of Delaware, and FRANCIS V. DUPONT,

*vs.*

HIRAM LASHER and BERTHA LASHER, his wife.

COLEMAN DUPONT ROAD, INCORPORATED, a Boulevard Corporation created by and existing under the laws of the State of Delaware, and FRANCIS V. DUPONT,

*vs.*

RODNEY FEED COMPANY, a corporation of the State of Delaware.

*Sussex, November 1, 1951.*

*Daniel J. Layton, Sr.,* Georgetown, for plaintiffs.

*Isaac D. Short, 2d,* Georgetown, and *Sidney Schwach,* Milford, for defendants.

SEITZ, Chancellor: These are two actions seeking to have this court restrain the defendants from encroaching upon lands belonging to the plaintiff corporation or in the alternative to enter into a lease of said lands with the plaintiff corporation upon fair and just terms.

In 1911 the Delaware General Assembly passed a law authorizing the organization of "Boulevard Corporations". See 26 *Laws of Delaware, Chap.* 189, *Rev. Code of Del.* 1935, *Chap.* 65, *Art.* 10. On October 16, 1911, Thomas Coleman duPont and others, pursuant to the stated Act, filed Articles of Association in the office of the Secretary of State creating a corporation entitled "Coleman duPont Road, Incorporated", the corporate plaintiff in these actions. Reference to "plaintiff" will embrace only the corporate plaintiff unless reference to the individual plaintiff is necessary.

Its Articles stated that plaintiff was being created, *inter alia,*

"* * * for the purpose of locating, building, constructing, maintaining and operating a Boulevard extending from a place in the Northern part of New Castle County, by as nearly a straight course as may prove feasible and desirable, through the State of Delaware to the Southern boundary thereof, and for the purpose of constructing upon said Boulevard a well built road for vehicular travel such as is required by said Act as amended, * * *."

Plaintiff acquired by grant or by condemnation a 200

foot right of way extending from the southern boundary line of the State of Delaware near the town of Selbyville to the Kent-Sussex County line, near the town of Milford. It proceeded to construct a road for vehicular travel along and in the center of said right of way. On May 23, 1917 plaintiff deeded to the State of Delaware a strip of land 40 feet in width, being 20 feet on either side of the center line of its right of way, commencing at the Delaware-Maryland line near Selbyville and terminating at the south side of the road leading from Georgetown to Laurel near Georgetown. The balance of such land is still held by plaintiff.

Plaintiff did not construct a road for vehicular travel north of the Kent-Sussex County line nor did it acquire title to any lands north of Sussex County. The plaintiff has never constructed upon its right of way any utilities nor has it planted thereon any trees, grass, flowers or shrubbery.

As early as 1917 plaintiff began to charge property owners abutting on its right of way a fee for the privilege of crossing the right of way. Reference to plaintiff's "right of way" embraces that portion of the 200 foot strip in Sussex County not conveyed to the State of Delaware. As business establishments gradually grew up along the right of way plaintiff began to charge different fees to the abutting owners depending upon the use to which their property was put.

After some negotiation both defendants refused to execute leases with plaintiff and these actions followed seeking either a mandatory injunction requiring defendants to remove building encroachments on plaintiff's right of way or enter into a lease with plaintiff.

This is the decision after final hearing.

I find as a fact that portions of defendants' properties are encroaching on plaintiff's right of way. Indeed, defendants introduced no evidence to the contrary.

Defendants urge that plaintiff's actions should fail for the following reasons:

(1) The corporate plaintiff has forfeited its franchises and Articles because it failed:

(a) to construct the road for vehicular travel from the Northern to the Southern terminus specified in its Articles within the time limit fixed in the statute,

(b) to devote its right of way, other than the road for vehicular travel, to the public use and benefit within a reasonable time;

(2) The plaintiffs are not in court with clean hands;

(3) The plaintiffs should be decreed to do equity before they can obtain any equity;

(4) The plaintiffs are barred from the present action by their laches;

(5) The trust declared by the individual plaintiff, on his own and the corporation's account, is a dry and passive trust, by reason of which the trustees have no right to maintain these actions.

Defendants' contentions will be considered in the order listed.

Defendants first contend that the undisputed facts show that plaintiff has forfeited its franchises and Articles of Association.

Plaintiffs contend that, even if this is so, defendants may not raise such an issue in these actions. Plaintiffs say that such an issue must be raised in a direct action by the State seeking a judicial declaration of forfeiture. This is the crucial issue and its solution requires an examination of certain language of the Act and the Delaware cases.

*Paragraph* 2234 of the 1935 *Del. Code, Chap.* 65, provides:

"Any Boulevard corporation created under the provisions of this Chapter shall commence the surveys of its Boulevard within two months from the date of its organization and shall complete the whole of the said road for vehicular travel required to be built and constructed by it within six years from the date of its organization; provided, that, if any such corporation shall fail to comply with the provisions of this Section, it shall thereby forfeit the franchises given it by this Chapter and shall also forfeit all or any portion remaining of the money deposited by it with the State Treasurer under the provisions of Section 193 of this Chapter; provided further, however, that if any such corporation shall be restrained, prevented or enjoined by any proceedings whatever at law or in equity from prosecuting the work of building and constructing said road, the time during which any such corporation shall be so restrained, prevented or enjoined shall not be taken or computed as any part of the time allowed and limited in this Section for the building and completing of said road."

Assuming therefore that facts exist which would in an appropriate proceeding be found to constitute a forfeiture, the question is whether such facts are available by way of defense in these actions. In *Wilmington City Ry. Co. v. Wilmington & B. S. Ry. Co.*, 8 *Del. Ch.* 468, 46 *A.* 12, *Williamson v. Gordon Heights Ry. Co.*, 8 *Del. Ch.* 192, 40 *A.* 933, which was an action to enjoin the defendant from using the Wilmington city streets for a railway, complainant contended that the defendant had forfeited its franchise within the city. Defendant contended *inter alia* "that it was not competent for the complainant to raise these questions in this case; that they must be determined first by *quo warranto* proceedings in the name of the State; * * *." The language of the defendant's charter provided that the prescribed work had to be completed before a certain date "otherwise this act shall become void, and all the rights, privileges and franchises herein granted shall wholly cease and determine." The court went on to consider whether or not under such language the matter of the alleged forfeiture could be raised in such a proceeding. The following discussion by the court must constitute the basis for resolving the issue here presented:

"The reason why a forfeiture created by a statute is self-executing

while one raised by the common law is not, is that the legislature said so, and intends so. In every case the decision of the court is based upon the precise language of the statute, and, after a very extensive examination of the authorities, I have been unable to find a single case in which the precise language used in the forfeiture clause under consideration, viz, 'such act shall become void, and all the rights, privileges and franchise therein granted shall wholly cease and determine,' has been held not to be self-operating. The charter is held to expire in such cases (as in those with which we are so familiar in this state) where the duration of the charter is limited to 20 years, and at the expiration of the time limited the fact may be ascertained in a judicial proceeding whether the question arose directly or collaterally, whenever ascertainment becomes necessary for the protection of rights or the prevention of wrongs. When any lnaguage less explicit and clear than 'shall cease and determine' is used, the weight of authority is in favor of the view that the statute does not undertake to decree a forfeiture, but only to prescribe the consequences which should flow from certain future acts and omissions on the part of the company, and that, therefore, the question whether a forfeiture of the charter of the company had occurred could only be determined in the proper judicial proceedings brought in behalf of the public for the purpose of testing the question."

Under the quoted language it would appear that the question this court must determine is whether or not the language of the statute here involved is at least as explicit in its forfeiture provisions as the language in the *Wilmington City Ry. Co.* case. In other words, is the language "shall thereby forfeit the franchise given it" as explicit as "such act shall become void, and rights, privileges and franchise therein granted shall wholly cease and determine"?

It is apparent that these defendants have such a property right position as entitles them to make the forfeiture defense. The problem is whether the language of the quoted statute evidences an intention to make the forfeiture self-operative or whether it is dependent upon such a finding in a proceeding directly seeking a judicial forfeiture. The court in the *Wilmington City Ry Co.* case apparently approved the rule that unless the statutory forfeiture language is at least as explicit as the language there involved, the

matter of forfeiture can only be raised in a direct proceeding.

It must be apparent that the pertinent language in the present statute when compared with that involved in the *Wilmington City Ry. Co.* case is less explicit. Nothing in the statute here involved provides that the very Act itself shall become void for failure to perform. The language providing that failure to perform shall result in a forfeiture of the franchise is not circumscribed by any language which in effect strikes down *ipso facto* the very source of the power. "Cease and determine" is most explicit. In contrast, to say, as does the present statute, that failure to perform thereby forfeits the franchise is to state little if any more than the common-law consequence—which requires a judicial forfeiture to effectuate. Nothing in the law of forfeiture requires this court to lean in favor of forfeitures although there is some language of dubious worth in an earlier case concerning a rule of strict construction against the corporation. See *Williamson v. Gordon Heights Ry Co.*, 8 *Del. Ch.* 192, 40 *A.* 933. In any event the *Williamson* case involved statutory language as explicit as that in the *Wilmington City Ry. Co.* case.

Defendants cite some cases from other jurisdictions where language not dissimilar to the language here involved has been held to work an automatic forfeiture. Whatever their merit, it seems to me that this court in the *Wilmington City Ry. Co.* case laid down a rule of construction which requires more explicit language than that here involved before the statute will be construed to be self-executing. Such a rule accords with the rulings of the majority of the courts in this country. See 16 *Fletcher, Cyc. Corps., (Perm. Ed.)* § 7988. Defendants also emphasize the word "thereby" in the present statute. It seems to me that the word as employed in the statute means no more than that the failures should have the consequence of working a forfeiture. But this is not to say that such forfeiture is automatic under the test in the *Wilmington City Ry. Co.* case.

■ I therefore conclude that the statutory language of forfeiture here considered does not evidence a legislative intent to have the failure here involved work an immediate forfeiture. The same conclusion, applies, *a fortiori*, to the defendants' contention 1(b) even though the designated statutory provision be construed to be mandatory. In any event the Act does not give these defendants the right to raise such a question in this type of action. So viewed, on the authority of *Wilmington City Ry. Co. v. Wilmington & B. S. Ry. Co.*, *supra*, I hold that these defendants may not raise the defense of forfeiture in these actions. Proceedings, if any, seeking a judicial declaration of forfeiture must here be initiated by the State. Defendants' first defense therefore falls.[1]

Defendants next urge that plaintiffs are not in court with clean hands.

■ Defendants say that plaintiffs' unclean hands arise from the fact that plaintiffs, contrary to their expressed intention of many years standing, have not devoted the right of way to public use. Assuming without deciding that this is so, I do not believe that such a defense can here be recognized. I say this because to recognize this defense would mean that this court in effect would be permitting defendants to do indirectly, what they cannot do directly, viz., raise in these actions the defense that plaintiff has forfeited its franchise. I say this because the very issue of "public use" would be directly involved in considering defendants' defense 1(b).

Plaintiffs therefore do not come into equity with unclean hands.

Defendants next urge that before any relief can be granted plaintiffs, they should be decreed to do equity.

■ Defendants mean by this that plaintiff should

---

1. While it was not argued, *Art. IX, Sec. 1*, of the *Delaware Constitution* adds at least some support to this conclusion.

devote the right of way to the use and benefit of the public before it is entitled to ask for any relief. Once again by this contention defendants in effect seek to have this court determine whether or not the right of way is now being properly used for the use and benefit of the public. Such an issue would be a proper issue were this court now to consider the question of forfeiture. Since I have concluded that this defense may not be raised in these actions I see no basis for considering it merely because it is raised under the head of one of the great equitable maxims.

Defendants next urge that plaintiffs are barred by laches from maintaining these actions. Defendants have not pleaded this defense as required by the rules. However the plaintiffs have seen fit to meet the issue and I will therefore consider it.

The testimony shows that the defendant Lasher and his predecessors in title had reason to believe that their building encroached upon the plaintiff's right of way. It cannot therefore be said that the defendant Lasher or his predecessors in title were led to change their positions in reliance upon plaintiff's course of conduct.

As to the defendant Rodney Feed Co. and its predecessors in title, while the record does not show any knowledge of an encroachment, nothing was done by the plaintiff which misled the defendant Rodney Feed Co. and its predecessors. The defendant Rodney Feed Co. did not change its position in reliance upon plaintiff's conduct because the encroachment existed at the time of purchase by it. Moreover, it should be emphasized that defendants are not now contending that they took title by adverse possession.

Defendant Rodney Feed Co. suggests that in any event, since the encroachment was not intentional and since plaintiff is making no special use of the land, equity should not grant a mandatory injunction, but should only award plaintiff damages and require it to convey the land to such

defendant. Conceding that such a result might be justified in many cases, I do not believe that result should be reached here. I say this because this land was taken for and can be used by plaintiff only for a public purpose. See *Clendaniel v. Conrad*, 3 *Boyce*, (*Del.*) 549, 83 *A.* 1036, *Ann. Cas.* 1915 *B*, 968. Since defendant has not obtained any right by prescription, I think it would be undesirable to convert the use from a public to a private use in this manner.

I therefore conclude that the facts do not disclose such a situation as gives rise to the defense of laches.

Defendants urge finally that the trust involved is a dry and passive trust and in consequence plaintiffs have no right to maintain these actions. Assuming without deciding that this is a passive or dry trust, I do not believe that defendants are in a position to assert such a reason as a defense to these actions. I say this because once again in this way they are seeking by indirection to assert the defense of forfeiture. Such may not be done in these actions.

It follows that there is no merit to the defendants' defenses and the plaintiffs are entitled to a permanent mandatory injunction requiring defendants to remove the encroachments and restraining further trespass. However in view of certain equitable considerations which flow in favor of these defendants, and in view of plaintiffs' alternative prayer, the issuance of the injunction will be conditioned upon the plaintiff's first offering to enter into a lease of said lands with the defendants upon just and fair terms.

Orders on notice.